**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: _____**

| | |
|---|---|
| Jason Miyares and Christie A. Vidaillet, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>MAZDA MOTOR CORPORATION and MAZDA MOTOR OF AMERICA, INC. d/b/a MAZDA NORTH AMERICAN OPERATIONS,<br><br>　　　　　　Defendants. | <u>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u> |

The allegations contained in this Class Action Complaint are based on Plaintiffs' personal knowledge as to Plaintiffs' own conduct and on information and belief as to all other matters based on an investigation by counsel:

## I.    INTRODUCTION

1.     Plaintiffs Jason Miyares and Christie A. Vidaillet (collectively, "Plaintiffs") bring this class action lawsuit against Defendants Mazda Motor Corporation ("MMC") and Mazda Motor of America, Inc. d/b/a Mazda North American Operations ("MNAO") (collectively, the "Defendants" or "Mazda"), individually and on behalf of all other persons in the United States who purchased, own or owned, or lease or leased any model year ("MY") 2018–20 Mazda vehicle containing the defective Smart City Brake Support and/or Smart Brake Support systems as defined below (the "Class Vehicles"), for Defendants' violations of common and statutory law and conspiracy to conceal a known defect in the Class Vehicles.

2.     The Class Vehicles contain a feature called i-Activsense, which includes active safety technology and pre-crash safety technology, which are meant to prevent and reduce the risk of collisions. The Class Vehicles are equipped with a forward sensing camera ("FSC") that

is positioned near the rearview mirror and is a component of and utilized by a number of i-Activsense technologies, such as the Smart City Brake Support ("SCBS") and the Smart Brake Support ("SBS"). When working properly, the SCBS and SBS systems alert the driver of a possible collision using the warning indications on the display panel and a warning sound if the front radar sensor and the FSC determine that there is the possibility of a collision with an object, such as a vehicle, pedestrian, or bicycle ahead. If the systems deem a collision unavoidable, the automatic brake control is activated to reduce damage.

3.    Upon information and belief, when overheated, the FSC malfunctions and improperly activates the SCBS and/or SBS systems and slows down or stops the vehicles despite the absence of a legitimate trigger or chance of collision (the "Defect" or "Braking Defect").

4.    The Braking Defect presents significant safety risks for Plaintiffs and Class Members because when the braking system malfunctions and improperly stops or slows the vehicle, Plaintiffs and Class Members are unable to accelerate or maintain the speed of the vehicle. Plaintiffs, Class Members,  and other occupants of the Class Vehicles are at risk for rear end collisions and other accidents resulting in injury or potentially death because of Defendants' failure to correct the Braking Defect and/or disclose the existence of the Braking Defect and the safety risks it poses to drivers, vehicle occupants, regulators, and the public in general.

5.    The Braking Defect has resulted in numerous complaints to the National Highway Traffic Safety Administration ("NHTSA"), Mazda distributors, Mazda discussion forums, Mazda dealerships, and directly to Mazda. Upon information and belief, to date Mazda has not published a Technical Service Bulletin ("TSB") regarding the Braking Defect. As described more fully below, *infra* ¶ 79, in a TSB issued on December 5, 2018, Defendants acknowledge the FSC suffers poor heat radiation performance. These prior FSC issues coupled with customer complaints have

2

alerted Mazda of the potential for more complications with the SCBS and/or SBS systems. By actively concealing and/or misrepresenting the Braking Defect, Defendants have passed onto the Plaintiffs and Class Members the costs to inspect, diagnose, and/or fix the Braking Defect.

6.      Under federal law, Mazda must monitor customer complaints that can lead to safety concerns and must report them within five (5) days to NHTSA. Mazda regularly monitors the NHTSA complaints to satisfy the reporting requirements. Thus, Mazda is aware of the NHTSA complaints that have been filed involving the Braking Defect.

7.      Despite their knowledge of the Braking Defect, Defendants have concealed its scope and nature from Plaintiffs, Class Members, regulators, and the general public to misrepresent the standard, quality, and/or grade of the Class Vehicles. Defendants have knowingly, actively, and affirmatively concealed the existence, scope, and nature of the Braking Defect to increase profits by selling more Class Vehicles, avoid expenses associated with recalling and repairing the Defect in Class Vehicles, and avoid negative publicity associated with the Defect.

8.      Based on Defendants' representations in their 2019 Mazda Warranty Information Booklet and Maintenance schedules for the Class Vehicles, the SCBS and/or SBS systems are expected to last for the useful life of the vehicle. According to the Class Vehicles' maintenance schedules, the SCBS and/or SBS systems in the Class Vehicles are expected to last beyond the warranty periods and should not require maintenance during the useful life of the engine. Indeed, the SCBS and/or SBS systems are omitted from the maintenance schedules.

9.      When purchasing and/or leasing the Class Vehicles, Mazda provides one or more manufacturer's warranty coverages, most importantly the "New-Vehicle Limited Warranty" for 36 months or 36,000 miles, whichever comes first. This warranty covers defects in materials and workmanship in all parts supplied by Mazda. Even though Mazda provides this warranty, Mazda

has not provided Plaintiffs or Class Members with a repair or remedy. Since Defendants have not provided Plaintiffs and Class Members with Class Vehicles fit for the ordinary purpose for which they were sold and have not repaired the Braking Defect, Defendants have breached their express and implied warranties.

10.     Knowledge and information concerning the Braking Defect and the potential safety risks associated with the Defect was in the exclusive and superior possession of Mazda and/or its distributors and dealers and was not provided to Plaintiffs and Class Members, who could not reasonably discover the Defect through due diligence. Defendants were aware of the Defect and fraudulently failed to disclose the Defect to Plaintiffs and Class Members.

11.     The Braking Defect creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury.  Defendants put profits ahead of safety by continuing to design, manufacture, sell, and/or lease vehicles with the Braking Defect.

12.     Upon the lease and/or purchase of a new vehicle, a reasonable consumer does not expect the vehicle to contain a defective safety mechanism. In this case, because they contain the Braking Defect, the SCBS and SBS safety systems, which are meant to prevent or reduce the risk of an accident, increase drivers' and occupants' chances of being involved in rear end collisions. The Defect is material to Plaintiffs and Class Members. When Plaintiffs and Class Members purchased and/or leased their Class Vehicles, they reasonably relied on the expectation that their Class Vehicles would be free from defects and would not increase their chances of getting into a collision by abruptly and unexpectedly braking or stopping without reason, potentially resulting in injury or death.

13.     As a result of Defendants' misconduct, Plaintiffs and Class Members were harmed and suffered actual damages.  Plaintiffs and Class Members did not receive the benefit of their

bargain; rather, they purchased or leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation.  Purchasers and lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the Braking Defect been disclosed.  Plaintiffs and Class Members were deprived of having safe, defect-free FSC and braking systems installed in their vehicles, and Defendants unjustly benefitted from their unconscionable failure and delay in recalling their defective products, as Defendants avoided incurring the costs associated with recalls and installing replacement parts for years.

14.     Plaintiffs and Class Members also suffered damages in the form of out-of-pocket expenses and costs for diagnoses, repairs, and replacement of the components of the FSC and/or SCBS and SBS systems as well as expenses and costs needed for future diagnoses, repairs, or replacements.

15.     Plaintiffs and Class Members also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, such as but not limited to, expenses and costs associated with taking time off from work and paying for rental cars or other transportation arrangements.  Also, as a direct result of misconduct by Defendants, each Plaintiff and Class Member has out-of-pocket economic damage by virtue of having incurred the expense of taking the time to bring the vehicles in for repair.

16.     Plaintiffs and Class Members also suffered damages as a result of Defendants' concealment and suppression of the facts concerning the safety, quality, and reliability of Mazda vehicles with the Braking Defect.  Defendants' false misrepresentations and omissions concerning the safety and reliability of those vehicles and their concealment of the known safety defects

plaguing those vehicles and the Mazda brand caused Plaintiffs and Class Members to purchase, lease, or retain Mazda vehicles of diminished value.

17.     Had Defendants disclosed the safety hazards posed by the Braking Defect, Plaintiffs and Class Members would not have purchased and/or leased their Class Vehicles or would have accordingly paid less for their Class Vehicles.

18.     Due to the Braking Defect and Defendants' lack of disclosure and active concealment of the Braking Defect, Plaintiffs and Class Members overpaid for their Class Vehicles, did not receive the benefit of their bargain, were exposed to an increased risk of rear end collisions and resulting injuries, and may be subject to additional fees and expenses to try to remedy the Defect in the Class Vehicles.

19.     Plaintiffs and Class Members assert claims against Defendants for fraud or fraudulent concealment, negligent misrepresentation, breach of implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., unjust enrichment, and violation of the Florida Unfair & Deceptive Trade Practices Act, Fla. Sta. § 501.201, *et seq*. ("FDUTPA").

20.     As a direct result of Defendants' wrongful conduct, Plaintiffs and Class Members have suffered harm and actual damages, which include: (i) overpayment of the Class Vehicle; (ii) cost of diagnoses, repairs, and replacement of the components of the SCBS and/or SBS system; (iii) cost for future repairs or replacements; (iv) loss of use of the Class Vehicle; and (v) diminution of value of the Class Vehicle.

## II.     JURISDICTION AND VENUE

21.     Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), this Court has diversity jurisdiction over this action as the aggregate amount in controversy exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of interest and costs; is a class action

with more than 100 Class Members; and Plaintiffs and many Class Members are citizens of states different from Defendants' home states.

22.     This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under CAFA.

23.     This Court has personal jurisdiction over Plaintiffs as they agree to submit to the Court's jurisdiction. Under Florida Statutes §§ 48.193(a)(1), (2), and (6), this Court has personal jurisdiction over Defendants because: (i) Defendants conducted substantial business in the District; (ii) some of Plaintiffs' claims arise out of the Defendants, directly or by an agent, operating, conducting, engaging in, or carrying on a business in this state or having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state arising out of Defendants' acts and omission outside of this state; and, (iii) at or about the time of the injury, Defendants were engaged in solicitation or service activities within the state which were used or consumed within the state in the ordinary course of commerce, trade, or use, or Defendants derived substantial revenue from goods used or consumed or services rendered in this State.

24.     This Court also has personal jurisdiction over Defendants under 18 U.S.C. § 1965(d) because they are found, have agents, or transact business in this District. MNAO also consented to jurisdiction by registering to do business in Florida.

25.     Directly, and among their American subsidiaries, MMC has a widespread operational presence in the United States, with *inter alia*, administrative offices and storage and distribution centers employing thousands of personnel.  MMC's wholly owned subsidiary and distributer MNAO oversees the sales, marketing, parts, and customer service support of Mazda vehicles in the United States. By using its American subsidiaries as its channel for marketing,

distributing, warranting, selling, and leasing Class Vehicles in the United States and this District, MMC has deliberately taken affirmative steps to make Mazda-designed vehicles available to consumers, including Plaintiffs and Class Members, in the United States and this District; created continuing obligations between themselves and residents of the United States and this District; and purposefully availed themselves of the benefits and protections of conducting business in the United States generally and in this District.

26.     Defendants' unlawful conduct and practices were committed within the United States and this District.

27.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b), and (c) as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; Defendants marketed, advertised, sold, and/or leased the Class Vehicles in this District; Defendants' actions have caused harm to Plaintiffs and Class Members who reside in this District; Defendants regularly conduct business in this District; and, pursuant to 28 U.S.C. § 1391(c)(2), Defendants are residents of this District as they are subject to personal jurisdiction in this District.

28.     Furthermore, upon information and belief, considering that the FSC is more likely to unintendedly activate the  SCBS and/or  SBS systems when overheating, and given the high temperatures and humidity in Florida, members of the Florida Sub-Class are more adversely impacted by the Braking Defect, which makes venue especially appropriate and proper in this District.

## III.     PARTIES

### A.  **Plaintiffs**

29.     Plaintiffs Jason Miyares and Christie A. Vidaillet are citizens and residents of the

State of Florida and reside in North Bay Village. In April 2019, Plaintiff Miyares leased a 2019 Mazda3 from Brickell Mazda in Miami, Florida for personal, family, or household use. The Class Vehicle was operated in a reasonably foreseeable manner and as the Class Vehicle was meant to be used. Plaintiff Miyares still leases his 2019 Mazda3. Plaintiff Vidaillet is the primary driver of Plaintiff Miyares' Mazda vehicle.

30.     Unbeknownst to Plaintiffs, their Class Vehicle contained the Braking Defect, which exposes them to the risk of an unintended activation of the SCBS and/or SBS systems, posing safety hazards to the driver and occupants of the vehicle. If Plaintiffs had known of the Braking Defect, they would not have leased their Class Vehicle or would have paid significantly less for it. In fact, one of the factors that influenced Plaintiffs' decision in leasing the Mazda vehicle was Mazda's representations on its official website that the car had some of the top safety features.

31.     Plaintiff Vidaillet first experienced the Braking Defect sometime during the summer of 2019 when she was driving their Class Vehicle to work in the morning. While there was not a vehicle or object in front or beside her, the FSC overheated and unintendedly activated the SCBS and/or SBS systems, the display panel lit up with the BRAKE sign, and, in a matter of seconds, Plaintiffs' Class Vehicle went from forty (40) miles per hour (mph) to a complete stop. The vehicle behind Plaintiff Vidaillet was barely able to stop in time and the unintended activation of the braking system almost led to a rear end collision.

32.     The following morning, Plaintiffs took their Class Vehicle to a Mazda dealership who advised them that the computer in their vehicle was experiencing technical issues. The Dealer informed Plaintiffs that it had reset the computer and promised them that the vehicle would no longer brake in such an abrupt and unintended manner.

33.     On September 22, 2019, Plaintiff Vidaillet was driving their Class Vehicle when the FSC overheated and again unintendedly activated the vehicle's braking system twice within a matter of ten minutes. Plaintiffs took the vehicle back to the Mazda dealership and informed the Dealer that the vehicle's SCBS and/or SBS systems activated once again for no reason. After leaving their Class Vehicle at the dealership for inspection, Plaintiffs received a call from the dealership letting them know that their best options would be to disable any security features that the vehicle has or to point the air conditioner at the FSC while operating the vehicle in order to prevent the FSC from overheating and unintendedly activating the SCBS and/or SBS systems.

34.     Plaintiffs became understandably upset that Defendants were not taking the Defect in their Class Vehicle seriously and, in fear of danger, refused to drive the vehicle. The Mazda dealership provided Plaintiffs with a loaner car and advised Plaintiffs that they were going to reach out to Defendants to see what the next steps would be. Plaintiff eventually picked up his car from the dealership.

35.     When Plaintiffs' SCBS and/or SBS systems unintendedly activated and slowed down the vehicle yet again, Plaintiffs went back to the Mazda dealership and were informed that Mazda requested that Plaintiffs fill out a questionnaire and take the car in for inspection. The dealership retained their Class Vehicle for about a week and told Plaintiffs, upon re-delivery, that they could not recreate the accident and that they had cleaned the windshield.

36.     None of the advertisements reviewed or representations received by Plaintiffs or Class Members contained any mention or disclosure of the Braking Defect in the Plaintiffs' Class Vehicle's SCBS and/or SBS systems and the corresponding safety hazards associated with the Defect. Plaintiffs and Class Members had no knowledge of the Braking Defect, and had they

known about it, they would not have purchased or leased the Class Vehicle, or they would have paid significantly less for it.

37.     When Plaintiffs and Class Members purchased and/or leased their Class Vehicles, they relied on the reasonable expectation that the Class Vehicles would be equipped with a properly functioning SCBS and/or SBS systems that were free from defects, safe to operate, and would not pose a threat to their safety and lives. In fact, in their advertisements Defendants, knowing that consumers would rely on such representations when deciding to purchase and/or lease a Class Vehicle, warranted that the SCBS and SBS systems are meant to help prevent or reduce the risk of an accident and support consumers with their safe driving.

38.     The Braking Defect that Mazda concealed throughout the Class Period related to the safety and reliability of the Class Vehicles, and it affected the brand perception and market value of all Class Vehicles.  Information concerning the safety of these vehicles, including whether Mazda would implement necessary corrective safety measures for these vehicles, was material. Reasonable consumers, including Plaintiffs and Class Members, would consider that information important in deciding whether to purchase, lease, operate, trade in, or sell Class Vehicles.  Provided with the truth regarding these vehicles, Plaintiffs and Class Members would not have purchased or leased their Class Vehicles and/or would not have paid as much as they did; and would not, to their practical ability to do so, have continued to drive the Class Vehicles without corrective safety measures or other affirmative steps by Mazda to make these vehicles safe and protect their economic value.

39.     Further all Plaintiffs and Class Members did not receive the benefit of their bargain; rather, they purchased and leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer

expectations regarding safe and reliable operation.  All Plaintiffs and Class Members, either through a higher purchase price or higher lease payments, paid more than they would have or would not have otherwise purchased said vehicles, had the Braking Defect been disclosed.  All Plaintiffs and Class Members were deprived of having safe, defect-free FSC and braking systems installed in their vehicles, and Mazda unjustly benefited from its unconscionable delay in recalling its defective products, as it avoided incurring the costs associated with recalls and installing replacement parts for years.

40.     All Plaintiffs and Class Members also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, etc.

41.     All Plaintiffs and Class Members who have brought their Class Vehicles to dealerships have suffered out-of-pocket economic damages by virtue of having incurred the expense of taking the time to bring their vehicles in for repair.

42.     The Braking Defect creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to all identified Plaintiffs and Class Members.

**B.  <u>Defendants</u>**

43.     Defendant MMC is a Japanese corporation with its principal place of business in Hiroshima, Japan. MMC engages in the manufacture and sale of passenger and commercial vehicles and automotive parts around the world, including in the United States and this District. In 2017, MMC's global sales volume was 1,559,000 units. MMC is the parent corporation of MNAO.

44.     Through the subsidiaries that it established in the United States expressly to target the United States market (including MNAO), MMC annually sold hundreds of thousands of cars, including Mazda Class Vehicles, to auto dealers and consumers, including Plaintiffs, in the United States during the relevant time period.

45.     Defendant MNAO is a California corporation doing business in California and throughout the United States and Mexico. MNAO's corporate headquarters are located in Irvine, California. MNAO is a wholly owned subsidiary of MMC and oversees the sale, marketing, parts, and customer service support of Mazda vehicles, including Class Vehicles, in the United States and Mexico through nearly 700 dealers. In 2017, MNAO and its affiliated employees in the United States numbered around 21,000.

46.     At all relevant times, MNAO acted as an authorized agent, representative, servant, employee, and/or alter ego of MMC while performing activities, including but not limited to advertising, marketing, warranties, selling Class Vehicles, disseminating technical information, and monitoring Mazda vehicles in the United States. MNAO renders services on behalf of MMC that are sufficiently important to MMC and its sale of vehicles in the United States that MMC would perform those services itself if MNAO did not exist. Upon information and belief, MMC controls the public name and brand of MNAO, and in consumer transactions, like those with Plaintiffs, MMC's unified brand and logo serve as its and MNAO's official seal and signature as to consumers.

47.     MMC operates MNAO with a unity of interest and ownership such that MNAO is a mere instrumentality of its parent, MMC. MMC and MNAO engage in the same business enterprise and share common board members and employees. Upon information and belief, MMC has, and at all relevant times had, the contractual right to exercise, and in practice has exercised,

control over MNAO's work, including but not limited to the manner of Mazda Class Vehicles' marketing, the scope of written warranties, and representations made and facts withheld from consumers and the public about the Braking Defect.

48.     At all relevant times to this action, Defendants manufactured, distributed, sold, leased, and/or warranted the Class Vehicles under the Mazda brand name throughout the United States.

49.     Mazda and/or its agents designed, manufactured, and/or installed the defective SCBS and/or SBS systems in the Class Vehicles. Additionally, Defendants developed and disseminated the owner's manuals, warranty booklets, advertisements, maintenance schedule, and other promotional and technical matters relating to the Class Vehicles.

## IV.     FACTUAL ALLEGATIONS

### A.  <u>The Smart City Brake Support and/or Smart Brake Support Systems Defect</u>

50.     The Class Vehicles are equipped with the defective SCBS and/or SBS systems that contain and utilize the FSC, which overheats and unintendedly activates the vehicle's automatic braking system without a legitimate trigger or risk of collision.

51.     Most Mazda models now include a safety upgrade called i-Activsense, which is an umbrella term covering a series of advanced safety technologies that make use of detection devices, such as milli-wave radars, laser sensors, and cameras, as shown in the illustration below. i-Activsense includes active safety technology and pre-crash technology that is intended to help prevent and reduce the risk of an accident from occurring.



52.     The Class Vehicles are equipped with a FSC that is positioned near the rearview mirror, as shown in the illustrations below, and used by several i-Activsense technologies. According to Mazda's 2019 Mazda3 Owner's Manual, the FSC is used by the High Beam Control System, Traffic Sign Recognition System, Distance & Speed Alert, Driver Attention Alert, Driver Monitoring, Mazda Radar Cruise Control, Mazda Radar Cruise Control with Stop & Go function, Lane-keep Assist System, Traffic Jam Assist, and Smart Brake Support.



 

53.     The FSC determines the conditions ahead of the vehicle while travelling at night and detects traffic lanes. The distance from which the FSC can detect objects depends on the surrounding conditions.

54.     According to Mazda, the SCBS system helps the driver avoid frontal collisions while driving at slow speeds common in urban areas or congested traffic. The SCBS system alerts the driver to a possible collision using an indication in the display and warning sound when the FSC detects an object or vehicle ahead, as shown in the illustration below.



55.     In addition to the warning sound and collision indication, the system reduces damage in the event of a collision by operating the SCBS system and taking control of the brakes

when the system determines that a collision is unavoidable while the vehicle is being driven at a vehicle speed of about 2 to 18 mph, as shown in the illustration below.



56.     When the SCBS system is activated and operational, the user is notified by the flashing SCBS indicator light and the active driving display, as shown in the illustration below.



57.     According to Mazda, the SBS system can detect vehicles and obstacles as far as 200 meters ahead. The SBS system alerts the driver to a possible collision using a display and warning sound if the radar sensor (front) and the FSC determine that there is the possibility of a collision with a vehicle, object, or person ahead while the vehicle is being driven at about 10 mph or faster. When a risk of collision is detected, as illustrated below, the system slows the car down via a two-stage brake operation. SBS aims to help the driver avoid or reduce the severity of

collisions, particularly when driving at mid-to high speeds, by automatically applying the brake if there is danger of a collision.



58.     Upon information and belief, when the SCBS and/or SBS systems' FSC overheats, the FSC unintendedly activates the SCBS and/or SBS systems even though there is no risk or possibility of a collision with a vehicle, pedestrian, or object ahead.

59.     Upon information and belief, the SBS and SCBS systems can only be temporarily deactivated and when the Class Vehicles' engine is re-started, the SBS and SCBS systems become operational once again. This means that Plaintiffs and Class Members must remember to disable this function every single time they operate their Class Vehicles in order to avoid the risk of an unintended activation of the SBS and/or SCBS systems.

60.     According to the 2019 Mazda3 Owner's Manual, if the FSC cannot operate normally due to high temperatures, the system functions related to the FSC are temporarily disabled and the following warning lights turn on—the High Beam Control System warning indication/warning light (amber) and the i-Activsense warning indication/warning light. However, according to Mazda, this does not indicate a malfunction, and the Manual recommends that consumers cool down the area around the FSC, such as by turning on the air conditioner. However,

the Manual makes no mention or disclosure about the fact that when the FSC overheats, it may unintendedly and dangerously activate the SCBS and/or SBS systems and slow down or stop the Class Vehicles mid-drive.

61.     According to the 2019 Mazda3 Owner's Manual, the FSC and the front laser sensor may inadvertently determine that there is a vehicle ahead and the SCBS may activate: if there are objects on the road at the entrance to a curve; if there are vehicles passing in the opposite lane while making a curve; if there are metal objects, bumps, or protruding objects on the road; when passing through a toll gate; when passing under a vinyl curtain or flag; when encountering plastic objects such as pylons; when encountering two-wheeled vehicles, pedestrians, animals, or standing trees; or when the vehicle is driven with some of the tires having significant wear. The Owner's Manual does not mention or warn Class Members or operators of the Class Vehicles that overheating of the FSC may also cause the SCBS and/or SBS systems to unintendedly activate as if there was a risk for a collision when no such risk is present.

62.     Mazda knows and represents that rear end collisions are the most common type of accident and that approximately 60% of these occur at relatively low speeds of 18.6 mph or less, and Mazda claims that the SCBS and SBS systems will help prevent or reduce the number of collisions. However, no reasonable consumer would expect that a safety system meant to reduce the risk of collisions would end up creating a higher risk and chance of rear end collisions due to a defect in the vehicle's SCBS and/or SBS systems. This type of defect can lead to the inability to accelerate or maintain speed and subject the driver and passengers to safety risks, such as the potential for rear end collisions and other accidents potentially leading to injury or death.

63.     Furthermore, Plaintiffs and Class Members do not reasonably expect Defendants to conceal a defect or known safety hazard in the Class Vehicles. Plaintiffs and Class Members had

no reasonable way of knowing that the Class Vehicles contained the Braking Defect, which was defective in materials, workmanship, design, and/or manufacture and posed serious safety hazards to Plaintiffs, Class Members, and the public in general.

64.     As a result of Defendants' material misrepresentations and omissions regarding the standard, quality, or grade of the Class Vehicles and/or the existence of the Braking Defect, Plaintiffs and Class Members have been placed at risk for injuries and potentially death in addition to suffering actual damages, including but not limited to, out of pocket expenses, loss of time, loss of use of their Class Vehicles, and diminished value of their Class Vehicles.

## B. Defendants' Knowledge of the Braking Defect and Associated Safety Hazards

65.     Defendants fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and Class Members the Braking Defect in the Class Vehicles, even though Defendants knew or should have known of the design and/or manufacturing defects in the Class Vehicles.

66.     Mazda possessed exclusive and superior knowledge and information concerning the Braking Defect but did not provide that information to Plaintiffs and Class Members. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analyses, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those Dealers, repair order and parts data received from the dealers, consumer complaints to NHTSA, and the testing performed in response to the consumer complaints, *inter alia*, Defendants were aware, or at the very least should have been aware, of the Braking Defect in the Class Vehicles and chose to fraudulently conceal the Defect and its associated safety risks from Plaintiffs and Class Members.

67. Defendants knew or should have known that the Braking Defect was material to owners or lessees of the Class Vehicles and that Plaintiffs and Class Members could not reasonably discover the Defect on their own prior to purchasing or leasing the Class Vehicles or before the expiration of their Class Vehicles' warranties.

68. Despite Defendants' superior and exclusive knowledge of the Braking Defect, Defendants not only failed to disclose the Defect to the consumers at the time of purchase or lease of the Class Vehicles, or at any time after, but instead continued to equip, sell, and lease the Class Vehicles that contained the same defect. Defendants also failed to recall the Class Vehicles to remedy the Braking Defect. Mazda knowingly and intentionally concealed the Braking Defect and the potential safety risks associated with the Defect rather than disclosing the risk to Plaintiffs and Class Members.

69. The Braking Defect and its associated safety risks were concealed and/or actively suppressed in order to protect Mazda's corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and brand disparagement. Consumers were misled into believing that their vehicles had different qualities than what they purchased or leased and as a result were deprived of economic value and overpaid for their Class Vehicles.

70. At all relevant times, in promotional materials, advertisements, and other representations, Mazda and its authorized Dealers maintained that the Class Vehicles were safe and reliable, and made no reference to the Braking Defect. Plaintiffs and Class Members, directly or indirectly, saw or heard such promotional materials and advertisements prior to purchasing or leasing the Class Vehicles. Indeed, these misleading statements in the promotional materials, advertisements, and other representations about the Class Vehicles' reliability and safety were

material to Plaintiffs' and Class Members' ultimate decision in purchasing or leasing the Class Vehicles.

71.     Examples of Mazda's reliability and safety representations include, but are not limited to, the following:

a) In its Mazda of Lodi Blog, an authorized Mazda dealership provided that "Mazda is known for its incredible performance, upscale design and, of course, its ***innovative safety technology***. The best of Mazda's advanced safety technology can be found in the i-ACTIVSENSE safety package (available across the Mazda lineup)." (emphasis added).

b) In its Inside Mazda website, Mazda provided that "Mazda vehicles continue to be ***among the safest on the road***." (emphasis added).

c) In its 2019 Mazda3 brochures, Mazda claimed that it offers "***sophisticated safety innovations*** that alert you to hazards and help you avoid collisions—or lessen their impact—[and this] is the ingenious thinking behind i-Activsense." (emphasis added).

d) In its 2019 CX-9 Owner's Manual, Mazda claimed that "we at Mazda design and build vehicles with ***complete customer satisfaction*** in mind." (emphasis added).

e) In its official website, Mazda claimed that "our engineers work tirelessly with the goal of creating the most eye-***catching, exhilarating and safe vehicles on the road***." (emphasis added).

f) Mazda's Safety Philosophy, as stated on Mazda's official website, represented that "Mazda's ***aim is a safe and accident-free automotive society***" and that they

are undertaking "***developing and commercializing safe vehicles***." (emphasis

added).

72.     Notwithstanding Defendants' superior and exclusive knowledge of the Braking

Defect, Defendants failed to disclose the Defect to Plaintiffs, Class Members, and consumers at

the time of purchase or lease of the Class Vehicle and made no mention of the Defect in its

advertisements, promotional materials, and/or other representations.

### 1.   National Highway Traffic Safety Administration Complaints

73.     Consumers who purchased or leased Class Vehicles from Mazda have filed a

significant amount of complaints with NHTSA, reporting and detailing the defect in the Smart City

Brake Support and/or Smart Brake Support system.

74.     Federal law requires that Mazda monitor defects that can cause a safety issue and

report them within five (5) days to NHTSA. Therefore, Mazda must regularly monitor NHTSA

complaints to meet reporting requirements under federal law. Defendants, therefore, have

knowledge of the Defect due to consumer complaints, such as those made to NHTSA, as well as

by other means.

75.     Below is a small sample of consumer complaints made to NHTSA concerning the

Defect in the braking systems:

> **Date Complaint Filed:** 11/07/2019
> **Date of Incident:** 10/31/2019
> **Components:** Service Breaks, Unknown or Other
> **NHTSA ID Number:** 11278559
> **Consumer Location:** Houston, TX
> **Vehicle Make/Model/Model Year(s):**
> MAZDA MAZDA3 2019
> Crash: No
> Fire: No
> Number of Injuries: 1
> Number of Deaths: 0
> **Vehicle Identification Number:** 3MZBPAEM0KM…

23

**SUMMARY:**
CAR HAS GIVEN MULTIPLE WARNINGS THAT DRIVER AND SAFETY ASSIST FEATURES ARE DISABLED- DESPITE NOT BEING ENABLED. *CAR ALSO GAVE A CAMERA MALFUNCTION WARNING APPROXIMATELY 1 MINUTE BEFORE SLAMMING ON BRAKES UNEXPECTEDLY AT 35-40 MPH AND CAUSING INJURY TO DRIVER*; INCIDENT OCCURRED AT CLEAR NIGHT WITH NO OTHER CARS AROUND. CAR CURRENTLY IN SHOP; NO WORD ON WHAT CAUSED THIS OR WHEN IT WILL BE REPAIRED.

**Date Complaint Filed:** 11/01/2019
**Date of Incident:** 11/01/2019
**Components:** Forward Collision Avoidance
**NHTSA ID Number:** 11277532
**Consumer Location:** Astoria, NY
**Vehicle Make/Model/Model Year(s):**
MAZDA MAZDA3 2019
Crash: Yes
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM1BPBJM0K1…

**SUMMARY:**
TL* THE CONTACT OWNS A 2019 MAZDA 3. *THE CONTACT STATED THAT THE VEHICLE FAILED TO IMMEDIATELY ACCELERATE AFTER THE BRAKE ASSIST WAS ENGAGED*. AS A RESULT, THE CONTACT'S VEHICLE WAS REAR ENDED BY ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS NOT FILED AND THERE WERE NO INJURIES SUSTAINED. THE VEHICLE AS NOT TAKEN TO A DEALER OR INDEPENDENT MECHANIC FOR DIAGNOSTIC TESTING OR REPAIRS. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 7,000.

**Date Complaint Filed:** 10/03/2019
**Date of Incident:** 09/30/2019
**Components:** Service Brakes, Unknown or Other
**NHTSA ID Number:** 11265896
**Consumer Location:** Austin, TX
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No

Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFACM7J0…

**SUMMARY:**
***WHILE LIGHT BRAKING, CAR BRAKES JAM… CAUSING UNINTENDED STOP***.
DANGEROUS. AT NO TIME WAS A CODE FLAGGED. MENTIONED TO GIRL AT
DESK WHEN IN FOR SERVICE 3 TIMES. WHEN CAR WHEN IN FOR SERVICE.
LADT SERVICE I BELIEVE CAR WAS PUT ON DIAGNOSTICS. WAS TOLD
NOTHING FOUND. BECAUSE IT HAPPENS SO OFTEN & DEALERSHIP TELLS ME
CANNOT FIND ANY PROBLEM… I CALLED A MECHANIC OUTSIDE OF
MAZDA.
SPOKE ON THE PHONE WITH MASTER MECHANIC. & DESCRIBED PROBLEM.
HE INFORMED ME PROBLEM WAS A SENSOR IN THE TRANSMISSION. CAR
SHUTS DOWN & LOCKS. BECAUSE IT HAPPENS SO FAST NO CODE IS
GENERATED. SAID IS SERIOUS PROBLEM.


**Date Complaint Filed:** 06/13/2019
**Date of Incident:** 06/07/2019
**Components:** Service Brakes, Steering
**NHTSA ID Number:** 11219653
**Consumer Location:** Pomona, CA
**Vehicle Make/Model/Model Year(s):**
MAZDA MAZDA3 2019
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM1BPANM9K1…

**SUMMARY:**
ON JUNE 6, 2019 AT ABOUT 6:45 PM WHILE DRIVING IN STOP AND GO TRAFFIC
ON THE TRANSITION FROM THE 241 FWY TO THE 91 FWY I RECEIVED AN
ERROR ON MY DASH (ATTACHMENT 1) THREE TIMES WITHIN ABOUT 10
MINS "PUSH BUTTON START MALFUNCTION" THE CAR DID NOT STOP,
OVERHEAT OR MALFUNCTION IN SUCH A WAY TO PREVENT ME FROM
DRIVING TO MY DESTINATION, WHICH WAS 15 MILES AWAY.
ON JUNE 7, 2019 ON MY WAY TO WORK TRAVELLING AT ABOUT 65 MILES AN
HOUR ON THE 5 FWY AT ABOUT 10 AM IN THE MORNING WITH ***THERE BEING
NO VEHICLES AROUND THE CAR THE CAR DID AN EMERGENCY BREAK. I
KNOW THIS FROM THE DASH DISPLAY WHICH SHOWED A BRIGHT RED
CIRCLE WITH THE WARNING THAT THE EMERGENCY BREAKING SYSTEM
WAS ENGAGED***.

I'VE TAKEN IT TO THE DEALER THAT WAS CLOSE TO MY WORK LOCATION WITHIN 1 HOUR OF THE EVENT.

**Date Complaint Filed:** 07/19/2019
**Date of Incident:** 07/19/2019
**Components:** Unknown or other
**NHTSA ID Number:** 11233508
**Consumer Location:** Jacksonville, FL
**Vehicle Make/Model/Model Year(s):**
MAZDA MAZDA3 2019
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM1BPALM7K1…

**SUMMARY:**
***MY CARS COLLISION WARNING ENGAGED WITHOUT CAUSE. IT MAKES THE CAR BRAKES ABRUPTLY FOR NO REASON***. THIS IS ESPECIALLY DANGEROUS DURING HIGHWAY SPEED. IT HAPPENED 3 TIMES SO FAR IN THE 4 MONTHS THAT I OWN THE CAR. SOME OTHER OWNERS ALSO EXPERIENCED THIS.

**Date Complaint Filed:** 07/20/2019
**Date of Incident:** 07/12/2019
**Components:** Power Train
**NHTSA ID Number:** 11233576
**Consumer Location:** Palmdale, CA
**Vehicle Make/Model/Model Year(s):**
MAZDA MAZDA3 2019
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM1BPAJM8K1…

**SUMMARY:**
A SAFETY CRITICAL INCIDENT OCCURRED ON MY NEW 2019 MAZDA 3 HATCHBACK ***WHEN THE VEHICLE WHEN INTO "LIMP" MODE WHILE ADAPTIVE CRUISE CONTROL WAS ENGAGED AT HIGHWAY SPEEDS LEADING TO RAPID DECELERATION***. THE VEHICLE WAS TOWED TO THE NEAREST MANUFACTURER SERVICE LOCATION WHERE A DIAGNOSTIC WAS PERFORMED. CODES SHOW THAT COMMUNICATION BETWEEN THE

CENTRAL VEHICLE PROCESSOR AND MULTIPLE SUBPROCESSORS FAILED SIMULTANEOUSLY. COMMENTS WERE MADE BY MANUFACTURER SERVICE REPRESENTATIVES THAT FAILURE MODE IS LIKELY DIFFERENT FROM THE RECENT CYLINDER DEACTIVATION/ROCKER ARM RECALL. SERVICE REPRESENATIVES WERE INSTRUCTED TO SIMPLY CLEAR THE CODES AND DRIVE THE VEHICLE TO ATTEMPT TO REPRODUCE THE FAILURE DURING WHICH IT DID NOT OCCUR. I HAVE ATTACHED A SANITIZED VERSION OF THE SERVICE RECEIPT TO THIS MESSAGE WITH THE FULL LIST OF CODES.

UNFORTUNATELY MAZDA'S REPRESENTATATIVES WERE UNABLE TO PROVIDE ANY EXPLANATION ON WHY THIS FAILURE OCCURRED OR WHAT WILL BE DONE TO PREVENT IT IN THE FUTURE. ENGINEERING ANALYSIS WILL NEED TO BE PERFORMED TO REACH AN ACCEPTABLE CONCLUSION. ***ENVIRONMENTAL FACTORS RELATING TO THE INCIDENT INCLUDE A VERY HOT OUTSIDE AIR TEMPERATURE***, WITH A READING OF 115 DEGREE F FROM THE VEHICLE'S SENSOR ROUGHLY 15 MINUTES BEFORE THE INCIDENT. THE INCIDENT ALSO OCCURRED ON A VERY LONG SECTION OF US HIGHWAY WITH A CONSISTENT, GRADUAL INCLINE.

GIVEN THAT INFORMATION POTENTIAL CAUSES ARE INTERMITTENT COMPUTER HARDWARE FAILURE IN HIGH TEMPERATURE ENVIRONMENTS, OR A SOFTWARE ERROR IN POWER TRAIN CONTROL OR CRUISE CONTROL CAUSING A COMMUNICATION BUS FAILURE. WITH THE AGE AND MILEAGE OF THE VEHICLE (336 MI) THE POTENTIAL FOR THIS FAILURE OCCURING IS LIKELY PRESENT IN A LARGE PORTION OF NEW MAZDA VEHICLES.


**Date Complaint Filed:** 09/11/2019
**Date of Incident:** 09/06/2019
**Components:** Service Brakes
**NHTSA ID Number:** 11254694
**Consumer Location:** Hilliard, OH
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFBCM2J0…


**SUMMARY:**

WHILE DRIVING ON A CITY STREET AND THERE IS A CAR STOPPED IN FRONT, I WILL START TO BRAKE LIGHTLY AND THEN INCREASE BRAKING IF NEEDED. THREE TIMES THE CAR HAS STOPPED ITSELF WITH MAZDA'S "SMART CITY BRAKE" FEATURE. ***I HAD SPACE TO STOP IN TIME, BUT THE CAR'S SCB TAKES OVER AND VIOLATENTLY BRAKES THE CAR TO A STOP AN INCREASES THE CHANCE OF A REAR END COLLISION FROM A CAR***

*FOLLOWING ME. THIS HAS HAPPENED 3 TIMES*. EVERY TIME I HAD CONTROL AND COULD STOP IN TIME AND THE VEHICLE'S ALGORITHM SAYS TOO CLOSE AND STOPS THE CAR VIOLENTLY, EVEN IF I AM APPLYING THE BRAKES ALREADY. UNACCEPTABLE TO HAVE SCB FEATURE THIS SENSITIVE AND SHOULD NOT BRAKE MORE IF THE DRIVER IS ALREADY APPLYING THE BRAKES.

**Date Complaint Filed:** 09/11/2019
**Date of Incident:** 09/05/2019
**Components:** Service Brakes
**NHTSA ID Number:** 11254691
**Consumer Location:** Hilliard, OH
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFBCM2J0…

**SUMMARY:**
DRIVING IN THE CITY WHILE A CAR IN FRONT IS TURNING RIGHT AND WELL OUT OF THE CARS FUTURE PATH, *THE SMART CITY BRAKE FEATURE WILL IMMUNIATE ON THE DASH TO BRAKE, THERE IS NO NEED TO BRAKE AS THE CAR IN FRONT IS TURNING OUT OF THE WAY*. VERY ANNOYING AND UPSETS MY WIFE AS A PASSENGER. RADAR NEEDS REFLASHED AND THE BEAM WIDTH BE SMALLER. CAR SHOULD SEE THAT THE CAR IS LEAVING THE RADAR PATH AND SHOULD NOT START BEEP. THIS HAPPENS A LOT.

**Date Complaint Filed:** 08/20/2019
**Date of Incident:** 08/20/2019
**Components:** Service Brakes
**NHTSA ID Number:** 11245201
**Consumer Location:** Redondo Beach, CA
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFADM5J1…

**SUMMARY:**

THE SCBS (SMART CITY BRAKE SUPPORT) SYSTEM OVERREACTS TO OTHER VEHICLES AND FORCES MY VEHICLE TO STOP SUDDENLY (NOT SLOW DOWN) WHEN THERE IS SUFFICIENT DISTANCE FOR ME TO STOP OR THE VEHICLE IN FRONT IS TURNING AND NO THREAT. ***THIS OVERREACTION HAS NEARLY CAUSED FOUR ACCIDENTS IN WHICH THE SCBS FORCED THE CAR TO BRAKE AND THE VEHICLES BEHIND ME NEARLY HITTING MY CAR.*** RATHER THAN AVODING AN ACCIDENT, THE SYSTEM WILL CAUSE THEM IF IT WEREN'T FOR THE QUICK REACTIONS OF THE DRIVERS BEHIND ME.

**Date Complaint Filed:** 05/23/2019
**Date of Incident:** 05/08/2019
**Components:** Electronic Stability Control, Unknown or other
**NHTSA ID Number:** 11209506
**Consumer Location:** Snohomish, WA
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFBCM4J0…

**SUMMARY:**

***THE "SBS" SYSTEM IS A DANGEROUS ADD TO THE VEHICLE****. IT IS MEANT TO WARN THE DRIVER ABOUT VEHICLES SUDDENLY SLOWING OR BRAKING IN FRONT OF YOU. **THREE TIMES THIS SYSTEM HAS CAUSED ME NEAR COLLISIONS (THE SYSTEM APPLIED THE BRAKES HARD AND CAUSE THE WHEELS TOO LOCK NOT ALLOWING ME TO TAKE A SAFE DEFENSIVE ACTIONS)*** WHEN THE SYSTEM ACTIVATED WHEN THE "DANGER" WAS CLEARLY GONE OR I TOOK SAFE ACTION AND CHANGED LANES TO AVOID A COLLISION.THE ABOVE INCIDENTS INVOLVED ME DRIVING ON SURFACE STREETS AT POSTED SPEEDS OF 35-45 MPH. THIS ALL HAPPENED WITH IN A 2-3 WEEK SPAN OF TIME WHEN I HAD NOT DISABLED THIS FEATURE MANUALLY. THE ROAD CONDITIONS WERE DRY, DAYLIGHT HOURS, AND SEMI-CLEAR DAYS. ALL OF THE ABOVE INCIDENTS INVOLVED VEHICLES TURNING IN FRONT OF ME. THE LAST TIME THE INCIDENT HAPPENED WAS 05/08/19.

**Date Complaint Filed:** 10/26/2018
**Date of Incident:** 09/26/2018
**Components:** Electrical System

**NHTSA ID Number:** 11142801
**Consumer Location:** Ridgefield, CT
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3TCBDY4J0…

**SUMMARY:**
WHILE DRIVING THE VEHICLE THE CAR TO AN ABRUPT STOP AND I HAD NO CONTROL. THE DASHBOARD ILIT UP WITH ALL TYPES OF WARNINGS AND HEAT WAS COMING FROM THE FRONT OF THE CAR.

**Date Complaint Filed:** 02/01/2019
**Date of Incident:** 01/25/2019
**Components:** Service Brakes
**NHTSA ID Number:** 11173621
**Consumer Location:** Bowling Green, KY
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFADM4J1…

**SUMMARY:**
***PERSISTENT ISSUE WITH SMART CITY BREAK SYSTEMS MALFUNCTIONING CAUSING THE VEHICLE TO BREAK WITHOUT WARNING***. SO FAR ONLY AT LOW SPEEDS BUT IT TRIGGERS A CHECK ENGINE LIGHT DUE TO ME PUSHING THE GAS WHILE THE CAR IS TRYING TO BREAK, WHEN I CAN GET TO A SPOT TO TURN THE ENGINE OFF, THEN BACK ON, THE WARNINGS GO AWAY. IT IS VERY UNSETTLING WHEN THIS HAPPENS AND ***FEELS LIKE AN ACCIDENT COULD OCCUR AT ANY MOMENT AS I CAN'T CONTROL THE SPEED OF THE VEHICLE WHEN THIS HAPPENS***. SO FAR THIS HAS HAPPENED ON CITY STREETS AND ONCE WHILE DRIVING IN A CURVY COUNTRY ROAD. HAS OCCURRED AT LEAST 5 TIMES IN THE TWO WEEKS IVE ONLY THE VEHICLE AND THE DEALERSHIP HAS NO IDEA WHAT IS WRONG. ***THEY REPLACED SOME PARTS BUT IT'S STILL HAPPENING***.

**Date Complaint Filed:** 01/13/2019

**Date of Incident:** 06/04/2018
**Components:** Service Brakes, Engine, Power Train
**NHTSA ID Number:** 11166766
**Consumer Location:** Sebastopol, CA
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-5 2018
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFACM2J0…

**SUMMARY:**
MY BRAND NEW 2018 MAZDA CX 5 THAT I BOUGHT FROM MARIN MAZDA IN
SAN RAFAEL CA
*DRIVING ON THE FREEWAY AT APPROXIMATELY 68 MPH MY CAR
SUDDENLY IS SLOWING DOWN – LIKE SELF BRAKING ON ITS OWN- I WAS
NOT BRAKING* – THIS WAS HAPPING WHILE I WAS ACCELARATING- IT FELT
LIKE I WAS TOWING A LARGE TRACTOR- THIS RESISTANCE KEEPS
RECURRING CAUSING SAFETY CONCERN AS WELL AS BAD GAS MILEAGE –
WHLE THIS ISSUE IS HAPPENING I GET BETWEEN 15-17 MILES PER GAL. –
TOOK PICTURES OF FUEL MONITORING SYSTEM. HAVING TO MAKE MY
WAY TO THE NEAREST EXIT WITH CARS HONKING AT ME WAS DANGEROUS.
CAR HAD 350 MILES ON IT. TOOK CAR BACK TO MARIN MAZDA A COUPLE
OF DAYS LATER FOR THIS ISSUE AND BECAUSE IT IS VERY LOUD WITH
EXCESSIVE ENGINE NOISE WHEN STARTED EVERYDAY. VERY CONCERNING
AS TO IT BEING A NEW CAR. DEALER SAID THAT'S JUST HOW MAZDA'S
SOUND IT'S OK WE DIDN'T NOTICE ANYTHING OUT OF THE ORDINARY.
YOUR CAR IS FINE. THE WHEEL RESISTANCE THAT YOU ARE FEELING IS
PROBABLY BECAUSE THEY SPRAY STUFF ON THE CAR TO PREVENT RUST
BEFORE THEY SHIP VEHICLE, THAT COATING JUST NEEDS TO BURN OFF. SO
YOU NEED TO DRIVE IT TO BURN IT OFF. YOUR CAR IS OPERATING THE WAY
IT WAS INTENDED TO. REALLY – THIS IS NOT HOW ANY NEW CAR SOUNDS
OR DRIVES. I HAVE A PASSENGER WITH ME AT THIS TIME HE ALSO STATED
THIS WAS NOT A NORMAL CONDITION FOR ANY VEHICLE THAT IS
OPERATING PROPERLY.

**Date Complaint Filed:** 12/27/2018
**Date of Incident:** 12/26/2018
**Components:** Service Brakes
**NHTSA ID Number:** 11163662
**Consumer Location:** Lindenhurst, NY
**Vehicle Make/Model/Model Year(s):**
MAZDA CX-9 2018

Crash: Yes
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Vehicle Identification Number:** JM3KFBCM5J0…

**SUMMARY:**
12/26/2018 VEHICLE HAS 1500 MILES ON IT. DRY CLEAN PAVEMENT, 39 DEGREES F, AT NIGHT. SLOW SPEED, 15 MPH, NORMAL BRAKING IN CONGESTED HIGHWAY TRAFFIC, GOING STRAIGHT, ANTI LOCK BRAKE SYSTEM ACTIVATED AND VEHICLE AUTOMATICALLY BRAKED VERY HARD, VEHICLE BEHIND STRUCK OUR CAR FROM BEHIND BECAUSE THEY DID NOT ANTICIPATE A VERY HARD BRAKE, CONDITIONS DID NOT CALL FOR A HARD BRAKE. DASH WARNING LIGHTS CAME ON INDICATING "FORWARD SMART CITY BRAKE SUPPORT MALFUNCTION" AND "FRONT CAMERA SENSOR SYSTEM MALFUNCTION". ONLY DAMAGE WAS TO REAR OF VEHICLE, NO INJURIES. VERY DANGEROUS MALFUNCTION. WILL BE BRINGING TO DEALERSHIP TODAY, 12/27/2018. STATE TROOPERS AT SCENE AND REPORT FILED, NOT YET ON HAND FOR SUBMISSION. TWO PHOTOS TAKEN MINUTES AFTER THE ACCIDENT OF DASH ATTACHED.

76.     Consumer complaints have also been posted elsewhere on the Internet, such as on blogs and websites maintained by automotive enthusiasts, who have shared their SCBS and/or SBS systems' Defects with other Class Vehicle owners. Below are samples of some complaints posted on the mazda3revolution.com website:

- Mazda3Revolution.com (Post Number 2462113): Hi! I bought a 2019 Mazda 3 AWD Premium Hatchback about 2 months ago. I love it! However, there have been 3 instances where the smart brake support/collision avoidance has kicked in unexpectedly. I'm not sure what the exact safety feature/system is called, but it has to do with braking. All 3 times the car has literally stopped hard, almost to a dead stop. One time I was slowing down behind the car in front of me who was making a right turn, and it stopped me from like 45 mph. All I can gather is it thought I was travelling too close? The other 2 times I was going like 30 on a pretty ordinary road, 1 lane in each direction, and the car suddenly puts the brakes on. Neither time did I see anything in front of me. I only know that I was kind of rounding a curve both times and there was an oncoming car so maybe my car misjudged and thought the upcoming car was coming at me? But that's just normal everyday driving. All 3 times the car also flashes the "Brake" light/message in red on the screen. ***It's scary because to me it's been so unpredictable because I don't see anything it should be trying to avoid. I'm worried that I'm going to cause an accident- that someone will run into the back of me when I stop so suddenly like that***.

Anyone experience this? I took it to the dealer today and they switched one of the settings, but I don't expect that to do anything. If the car thinks something is there, it will react, no matter the timing setting that is selected. He set it to respond later. They also said I could bring it in on Monday so I will do that. The guy said he hadn't heard of that problem before, *they also said there is no way to turn the system off*.

- Mazda3Revolution.com (September 2, 2018): Is there a way to disable the SBCS/Braking System? I drive a manual Mazda 3 with the entire purpose of controlling the car. I am unable to do so when the car suddenly brakes from 80 mph to 60 mph on the highway?

77.     In addition to NHSTA complaints, Mazda also received complaints directly and through its dealers about their inability to provide a solution to the Braking Defect.

78.     In a TSB issued on December 5, 2018, Defendants state that some customers may complain about one or more warning lights turning on when they start the vehicle during hot weather. According to the TSB, the following diagnostic trouble code ("DTC") may be stored in memory "forward sensing camera stops functioning due to temporary high temperature." Additionally, the instrument cluster multi-information display may issue warning messages such as "forward smart city brake support malfunction," "smart brake system malfunction," and "front camera sensor system malfunction." Mazda acknowledged that these issues may be caused by poor heat radiation performance of the FSC. Therefore, Mazda was aware that the FSC had issues with poor heat radiation that was affecting the safety of their vehicles and could lead to further problems, such as the FSC overheating and activating the SCBS and/or SBS systems despite the lack of a potential collision.

79.     Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analyses, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those Dealers, repair order and parts data received from the dealers, consumer complaints to NHTSA, public consumer complaints made online, and the testing performed in response to the consumer complaints, *inter alia*,

Defendants were aware, or at the very least should have been aware, of the Braking Defect in the Class Vehicles and chose to fraudulently conceal and misrepresent the Defect and its associated safety risks from Plaintiffs and Class Members. Additionally, Defendants learned about the Braking Defect from sources not available to Plaintiffs and Class Members.

80.     Additional information supporting claims of fraud and fraudulent conduct is in the control of Mazda. This information includes, but is not limited to, technical root cause analyses, communications with Class Vehicle owners, remedial measures, warranty claims, and internal corporate communications concerning how to deal with consumers who claim that their automatic braking system was defective.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS

81.     Any applicable statute of limitations is tolled as a result of Defendants' knowing and active concealment of the Braking Defect and the omissions and misrepresentations alleged herein. Plaintiffs and Class Members, through no fault of their own or any lack of due diligence, were deceived regarding the safety and performance of the SCBS and/or SBS systems and could not reasonably discover the Defect or Defendants' deception concerning the Defect.

82.     Plaintiffs and Class Members could not have discovered, through the exercise of reasonable due diligence, or know of any of the facts that would have caused them to suspect Defendants' deception within the time period of any applicable statute of limitations.

83.     At all relevant times, Defendants are and were under a continuing duty to disclose the true standard, quality, and grade of the Class Vehicles and to disclose the safety risks associated with the Braking Defect to Plaintiffs and Class Members.

84.     Defendants knowingly, actively, and affirmatively concealed the facts alleged herein, including the Braking Defect and the potential safety risks associated with the Defect.

Plaintiffs and Class Members reasonably relied on Defendants' active, knowing, and affirmative concealment.

## VI.   CLASS ACTION ALLEGATIONS

85.   Plaintiffs bring this proposed action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2), and/or (b)(3), on behalf of themselves and all members of the proposed Classes as defined below:

> **Nationwide Class:** All persons or entities who purchased, leased, or own a Class Vehicle in the United States (the "Nationwide Class" or "Class").

> **Florida Sub- Class:** All persons or entities who purchased, leased, or own a Class Vehicle in the State of Florida (the "Florida Sub-Class").

86.   The Nationwide Class and the Florida Sub-Class are collectively referred to herein as the "Classes." The Class and Florida Sub-Class exclude Defendants and their parents, subsidiaries and corporate affiliates, as well as any entity in which Defendants have a controlling interest, directors, officers, assigns, employees, successors, and legal counsel.

87.   Plaintiffs reserve the right to alter the definition of the Classes and the right to establish additional sub-classes where appropriate in the event of subsequently discovered information.

88.   <u>Numerosity:</u> The proposed Classes are so numerous that individual joinder of all members is impracticable. In 2018 alone, there were over 300,000 Mazda vehicles sold in North America. Currently, the number, location, and identity of all proposed class members cannot be ascertained. However, this information will be obtainable from the Defendants through discovery.

89.   <u>Commonality:</u> Common questions of law and fact exist as to all Class Members and predominate over any issues solely affecting individual Class Members. The common and predominating questions of law and fact include, but are not limited to:

- Whether the Class Vehicles suffer from the Braking Defect;

- Whether the Braking Defect located in the Class Vehicles contains a design defect and/or a defect in material, manufacturing, or workmanship;

- Whether the Braking Defect installed in the Class Vehicles presents a safety risk;

- Whether Defendants knew or should have known about the Braking Defect, and, if so, how long Defendants have known of the Defect;

- Whether Defendants had a duty to disclose the Class Vehicles' Braking Defect and/or that the Braking Defect presents a safety risk;

- Whether Defendants breached their duty to disclose the Class Vehicles' Braking Defect and/or that the Braking Defect presents a safety risk;

- Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed, and/or omitted material facts, including the Class Vehicles' Braking Defect and/or that the Braking Defect presents a safety risk;

- Whether Defendants negligently or falsely misrepresented or omitted material facts, including the Class Vehicles' Braking Defect and/or that the Braking Defect presents a safety risk;

- Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality, or grade of the Class Vehicles and/or the Braking Defect;

- Whether Defendants breached their implied warranties to Plaintiffs and Class Members;

- Whether Class Members would have purchased or leased a Class Vehicle or paid less to purchase or lease their Class Vehicle, if at the time of purchase or lease, Defendants had disclosed the Defect and the associated safety risks;

- Whether Defendants actively concealed or omitted material facts from Plaintiffs and Class Members to sell more Class Vehicles and avoid incurring the cost and expenses of fixing the Braking Defect;

- Whether Mazda violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;

- Whether Defendants committed unfair and deceptive business practices by failing to inform owners and lessees of the Class Vehicles prior to purchase and/or lease that the SCBS and/or SBS systems were defective and that this Defect may pose significant safety risks; and

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

90.    <u>Typicality:</u> Plaintiffs' claims or defenses are typical of the claims or defenses of the proposed Class Members. Class claims arise out of the ownership or lease of the Class Vehicles as defined in ¶ 1. As alleged herein, Plaintiffs and Class Members sustained damages as a result of the same illegal actions and course of conduct by the Defendants. The relief Plaintiffs seek is typical of the relief sought for the absente Class Members.

91.    <u>Adequate Representation:</u> Plaintiffs will fairly and adequately protect the interests of the Class Members and are willing to serve the Classes in a representative capacity. Plaintiffs do not have any conflicting interests with the proposed Classes, will protect the interests of Class Members, and will zealously prosecute this proposed action. Plaintiffs have engaged the services

of the undersigned counsel, who is experienced in complex litigation, and will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent Class Members.

92.     Class action status is warranted under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to Class Members predominate over any questions or issues affecting only individual Class Members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Plaintiffs do not anticipate or know of any difficulty to be encountered in the management of this litigation that would prevent its maintenance as a class action.

93.     Class action status is warranted under Rule 23(b)(1)(A) and (B) as well, considering that absent a class action, the prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants and substantially impair the ability of other nonparties to protect their interests.

94.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Classes, hence it is appropriate to award final injunctive relief or corresponding declaratory relief respecting the Classes as a whole.

95.     The interests of Class Members in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive. Therefore, Plaintiffs do not envision any difficulty in the management of this matter as a class action.

## VII.   CLAIMS FOR RELIEF

## COUNT ONE

## FRAUD OR FRAUDULENT CONCEALMENT

**(On behalf of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class)**

96.    Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

97.    Plaintiffs bring this count against Mazda on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

98.    Defendants intentionally and knowingly misrepresented, concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the SCBS and/or SBS systems were defective, thereby exposing drivers, occupants, and the public to safety risks. Defendants intended that Plaintiffs and Class Members would rely on such misrepresentations and omissions. Because of Mazda's fraudulent conduct, Plaintiffs and Class Members have suffered actual damages.

99.    With the purchase or lease of each of the Class Vehicles, Mazda provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Specifically, Mazda provided a "New-Vehicle Limited Warranty" for 36 months or 36,000 miles, whichever comes first. This warranty covers defects in materials and workmanship in all parts supplied by Mazda and it is a transferable warranty included on all new Mazda vehicles sold and serviced in the United States. On Mazda's official website, Mazda informs Plaintiffs, Class Members, and the public that when it comes to Mazda's limited warranty they should "rest-assured, we [will] be right there with you."

100.    Although Mazda informed Plaintiffs and Class Members that it would cover defects in materials and workmanship occurring during the warranty periods, Mazda knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Braking Defect, concealed the Defect, and did not intend to repair or replace the automatic braking system during the warranty periods. Upon information and belief, to date, Mazda has not provided Plaintiffs, Class Members, or consumers with a repair or remedy for the Braking Defect, which poses a safety risk not only to the Plaintiffs and Class Members, but the general public.

101.    As a result of Defendants' failure to disclose the material fact that the SCBS and/or SBS systems are defective and pose a safety risk, Plaintiffs and Class Members are required to sell their Class Vehicles at a loss.

102.    The fact that the automatic braking system installed in the Class Vehicles is defective and exposes drivers and occupants to safety risks is material, as Plaintiffs and Class Members had a reasonable expectation that the Class Vehicles would not suffer from such a defect and expose them to safety risks. Due to the FSC overheating and unintendedly activating the SCBS and/or SBS systems, drivers may not be able to accelerate or maintain speed and may come to an abrupt stop. This can create an increased risk for rear end collisions or other accidents resulting in injury or death caused by Plaintiffs' or Class Members' Class Vehicles abruptly braking or stopping. This poses not only a risk to Plaintiffs and Class Members, but also the general public, who are also at risk for being involved in an accident with a Class Vehicle that suddenly brakes or stops. It stands to reason that Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid less for them, but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Braking Defect.

103.    Defendants knew that their misrepresentation, concealment, and suppression of material facts were false and misleading and knew the effect of misrepresenting and concealing those facts. Defendants knew that their concealment and suppression of the Braking Defect would sell more Class Vehicles and would result in increased revenue and profits for Mazda due to the sale of additional Class Vehicles.

104.    Defendants acted maliciously, oppressively, and with intent to defraud.

105.    Plaintiffs and Class Members reasonably relied on Mazda's knowing, affirmative and active false representations, concealment, and omissions. As a direct and proximate result of Mazda's illegal actions, Plaintiffs and Class Members have suffered actual damages in an amount to be determined at trial.

**COUNT TWO**

**NEGLIGENT MISREPRESENTATION**

**(On behalf of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class)**

106.    Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

107.    Plaintiffs bring this count against Mazda on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

108.    Defendants owed a duty to disclose the Braking Defect and its associated safety risks to Plaintiffs and Class Members as Mazda had exclusive and superior knowledge concerning the Defect and its corresponding safety risks.

109.    Defendants negligently misrepresented, concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the SCBS and/or SBS systems were defective, exposing drivers, occupants, and the public to safety risks. Defendants intended that Plaintiffs and Class Members would rely on such

misrepresentations and omissions. Because of Mazda's negligent conduct, Plaintiffs and Class Members have suffered actual damages.

110.    As a result of Defendants' failure to disclose the material fact that the braking system is defective and poses a safety risk, Plaintiffs and Class Members are required to sell their Class Vehicles at a loss.

111.    The fact that the SCBS and/or SBS systems installed in the Class Vehicles are defective and expose drivers and occupants to safety risks is material as Plaintiffs and Class Members had a reasonable expectation that the Class Vehicles would not suffer from such a defect and expose them to safety risks. Due to the FSC overheating and unintendedly activating the SCBS and/or SBS systems, drivers may not be able to accelerate or maintain speed and may come to an abrupt stop. This can create an increased risk for rear end collisions or other accidents caused by Plaintiffs' or Class Members' Class Vehicles abruptly braking or stopping. This poses not only a risk to Plaintiffs and Class Members, but also the general public, who are at risk for being involved in an accident with a Class Vehicle that suddenly brakes or stops. It stands to reason that Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them, but for Defendants' negligent omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Braking Defect.

112.    Plaintiffs and Class Members reasonably relied on Mazda's negligent representations and omissions. As a direct and proximate result of Mazda's negligent actions, Plaintiffs and Class Members have suffered actual damages in an amount to be determined at trial.

## COUNT THREE

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(On behalf of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class)**

113.    Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

114.    Plaintiffs bring this count against Mazda on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

115.    Plaintiffs and Class Members purchased or leased the Class Vehicles from Mazda by and through Mazda's authorized agents. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles and knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

116.    At all relevant times, Defendants are and were merchants and sellers of goods as defined under § 2-103(1)(d) and § 2-104(1) of the Uniform Commercial Code ("U.C.C.").

117.    At all relevant times, with respect to leases, Defendants are and were lessors of goods as defined under §2A-103(1)(p) of the U.C.C.

118.    At all relevant times, the Class Vehicles are and were goods as defined under §2-105 of the U.C.C.

119.    Defendants implicitly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

120.    When sold or leased and at all times thereafter, the Class Vehicles were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. At the time of sale or lease and thereafter, the Class Vehicles contain an inherently defective braking system and present undisclosed safety risks to drivers and occupants. Accordingly, Mazda breached their implied warranty of merchantability.

121.    Defendants are not able to disclaim their implied warranty of merchantability as they knowingly sold or leased an inherently defective vehicle.

122.    Defendants were provided ample notice of the Braking Defect by numerous consumers' complaints to their authorized dealers and distributors nationwide, complaints to NHTSA, and through their own testing. Allowing Mazda a reasonable opportunity to cure their breach of implied warranties would be needless and futile here because Mazda knew of and concealed the Braking Defect.

123.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

124.    Mazda's attempt to disavow or limit their implied warranty of merchantability in relation to consumers is unconscionable and unenforceable. Particularly, the Mazda warranty limitation is unenforceable because Mazda knowingly sold or leased a defective product without informing consumers about the Braking Defect. The time limits contained in the Mazda warranty limitation are unconscionable and insufficient to adequately protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members did not determine or have a say in the limitations, the terms of which unreasonably favored Mazda. A gross disparity in bargaining power and knowledge existed between Mazda and Class Members, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Braking Defect created a safety hazard.

125.    Plaintiffs and Class Members have been excused from performance of obligations under the warranty as a result of Mazda's conduct described herein.

126.     Plaintiffs and Class Members have lost confidence in the reliability of their Class

Vehicles' ability to perform the function of safe trustworthy transportation without the risk of an

unintended brake or stop. Mazda is estopped by their conduct, as alleged herein, from disclaiming

any applicable implied warranties with respect to the Braking Defect in the Class Vehicles.

## COUNT FOUR

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA")
### 15 U.S.C. § 2301 *et seq.*

**(On behalf of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class)**

127.     Plaintiffs incorporate by reference and reallege each preceding paragraph as though

fully set forth herein.

128.     Plaintiffs bring this count against Mazda on behalf of themselves and the members

of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

129.     Plaintiffs satisfy the MMWA jurisdictional requirement as Plaintiffs allege

diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

130.     Plaintiffs and Class Members are "consumers" as defined under the MMWA, 15

U.S.C. § 2301(3).

131.     Defendants are "supplier[s]" and "warrantor[s]" as defined under the MMWA, 15

U.S.C. §§2301(4)-(5).

132.     The Class Vehicles are "consumer products" as defined under the MMWA, 15

U.S.C. §2301(1).

133.     Under 15 U.S.C. § 2310(d)(1), the MMWA provides a cause of action for any

consumer who is damaged by the failure of a warrantor to comply with a written or implied

warranty.

134.     The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

135.     Mazda breached these implied warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Braking Defect. Without limitation, the Class Vehicles share a common Defect in design, material, manufacturing, or workmanship in that they fail to operate as represented and advertised by Defendants and pose a safety hazard to consumers, including Plaintiffs and Class Members, all vehicle occupants, and the public.

136.     Additionally, Mazda also provided Plaintiffs and Class Members with an express warranty, which is covered under 15 U.S.C. § 2301(6). Defendants currently provide a new-vehicle limited warranty which covers "defects in materials and workmanship in all parts supplied by Mazda [for] 36 months or 36,000 miles, whichever comes first." Under the express warranty, Mazda promises to repair or replace defective parts supplied by Mazda at no cost to owners and lessees of the Class Vehicles.

137.     Mazda's attempt to disavow or limit their express or implied warranties in relation to consumers is unconscionable and unenforceable. Particularly, the Mazda warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Braking Defect. The time limits contained in the Mazda warranty limitation are unconscionable and insufficient to adequately protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members did not determine or have a say in the limitations, the terms of which unreasonably favored Mazda. A gross disparity in bargaining power and knowledge existed between Mazda and Class Members, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Braking Defect created a safety hazard.

138.    Affording Mazda a reasonable opportunity to cure its breach of warranties is needless and futile, because, at all relevant times, Mazda knew or should have known of the material misrepresentations and omissions regarding the standard, quality, or grade of the Class Vehicles and the Braking Defect, but nonetheless, failed to repair or replace the Braking Defect and/or disclose the Defect to consumers, including Plaintiffs and Class Members. Therefore, under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Mazda a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

139.    Plaintiffs and Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all the payments made by them to Defendants. Therefore, Plaintiffs and members of the Classes have not re-accepted their Class Vehicles by retaining them.

140.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.

141.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT FIVE
## UNJUST ENRICHMENT

**(On behalf of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class)**

142.    Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

143.     Plaintiffs bring this count against Mazda on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

144.     Plaintiffs and Class Members conferred a benefit on Mazda by purchasing or leasing the Class Vehicles. Defendants were and should have been reasonably expected to provide Class Vehicles that were free from the Braking Defect.

145.     Due to the false representations, omissions, and concealment of the Braking Defect, Defendants unjustly profited from the purchase and lease of the Class Vehicles at inflated prices.

146.     As a proximate result of Defendants' false representations, omissions, and concealment of the Defect, and due to Defendants' improperly obtained gains, benefits, and profits, Defendants have been unjustly enriched at the expense of Plaintiffs and Class Members. It would be inequitable for Defendants to retain their improperly obtained profits without paying the value thereof to Plaintiffs and members of the Classes.

147.     Due to Mazda's unlawful, unjust, and inequitable conduct, Plaintiffs and Class Members are entitled to restitution in the amount of Defendants' improperly obtained gains, benefits, and profits, including interest.

148.     Plaintiffs and Class Members seek an order compelling Mazda to disgorge their gains and profits to Plaintiffs and Class Members, along with interest, in a manner to be determined by the Court.

**COUNT SIX**

**VIOLATION OF FLORIDA'S DECEPTIVE & UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, et. seq.**

**(On behalf of Plaintiffs and the Florida Sub-Class)**

149.     Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

150. Plaintiffs bring this count against Mazda on behalf of themselves and the members of the Florida Sub-Class.

151. The Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), under Fla. Stat. § 501.204, prohibits "[u]nfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce."

152. Under Florida Statutes, section 501.202(2), one of the main purposes of the FDUTPA is to "protect the consuming public" from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

153. Under Florida Statutes, section 501.203(6) and (7), Plaintiffs and members of the Florida Sub-Class are "consumers" and "interested parties or persons."

154. Under Florida Statutes, section 501.203(8), Defendants engaged in "trade or commerce."

155. Defendants impliedly warranted that the Class Vehicles were in merchantable condition, were fit for the ordinary purpose for which vehicles are used, and were of a standard, grade, or quality that the vehicles were not.

156. Mazda breached these warranties by mispresenting the standard, grade, or quality of the Class Vehicles and by failing to disclose and conceal the existence of the Braking Defect, which, without limitation, is a common Defect in design, material, manufacturing, or workmanship in the Class Vehicles, and therefore committed unfair or deceptive acts or practices.

157. Mazda failed to disclose and actively concealed the defect in the SCBS and/or SBS systems in the Class Vehicles and the associated safety risks posed by the Class Vehicles, as alleged above and otherwise engaged in activities with a tendency or capacity to deceive.

158.    Defendants violated the FDUTPA when they employed unfair and deceptive acts or practices, fraud, misrepresentations, false pretenses, concealment, suppression, or omission of a material fact with the intent that others rely on such conduct in connection with the lease and/or sale of Class Vehicles. Mazda knowingly and actively concealed, suppressed, and omitted material facts concerning the defect in the braking system and the dangers and hazards posed by the Defect, in addition to misrepresenting the standard, grade, and quality of the Class Vehicles. Defendants' unlawful, immoral, and unethical conduct, in violation of the FDUTPA, directly caused harm to Plaintiffs and the members of the Florida Sub-Class.

159.    Defendants knew or should have known that the FSC located in the Class Vehicles has a tendency to overheat and unintendedly activate the SCBS and/or SBS systems of the Class Vehicle. Additionally, Defendants knew or should have known that the unintended activation of the SCBS and/or SBS systems and the consequent abrupt braking could lead to the Class Vehicles becoming involved in rear end collisions or other accidents, placing the drivers, vehicle occupants, and the public at risk for injury or potentially death.

160.    Defendants owed a duty to Plaintiffs and members of the Florida Sub-Class to disclose the Braking Defect and its associated safety risks as they possessed exclusive and superior knowledge concerning the Defect and the corresponding safety risks associated with the Defect.

161.    Defendants, instead of disclosing the Defect and risks, chose to engage in deceptive trade practices to be able to sell more Class Vehicles and protect their profits earned from the sale of additional vehicles.

162.    When purchasing and/or leasing their Class Vehicles, Plaintiffs and members of the Florida Sub-Class reasonably relied on the reasonable expectation that the Class Vehicles' braking system was not defective and would not pose unexpected and additional safety risks.

163. If the Plaintiffs and members of the Florida Sub-Class knew of the Braking Defect and Defendants' utter disregard for the safety of their consumers, they would have paid less for their vehicles and/or not purchased or leased them in the first place. Consequently, as a result of Defendants' misconduct, Plaintiffs and members of the Florida Sub-Class did not receive the benefit of their bargain.

164. With the intent to mislead Plaintiffs and members of the Florida Sub-Class, Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles and the defective braking system installed in the Class Vehicles.

165. Despite their knowledge about the Braking Defect, Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles and/or Braking Defect that were either false or misleading, such as selling and marketing the Class Vehicles as safe, reliable, and trustworthy.

166. Mazda knew or should have known that their conduct violated the FDUTPA.

167. Plaintiffs and members of the Florida Sub-Class risk loss of use of their Class Vehicles as well as increased safety risks due to Defendants' acts and omissions, which are in violation of the FDUTPA. These unlawful acts and omissions affect public interest, as they continue to present a risk of rear end collisions and other accidents to Plaintiffs and members of the Florida Sub-Class, as well as the public in general.

168. As a direct and proximate result of Defendants knowing and intentional concealment of the Braking Defect, in violation of the FDUTPA, Plaintiffs and members of the Florida Sub-Class have suffered and/or continue to suffer harm and injuries by the unintended activation of the SCBS and/or SBS systems, as well as other damages to be determined at trial.

169.    As a result of Mazda's violation of the FDUTPA, pursuant to Florida Statutes, section 501.211, Plaintiffs, as well as the members of the Florida Sub-Class, are entitled to injunctive and declaratory relief, actual damages, costs, attorneys' fees and costs, and any other just and proper relief available under the FDUPTA.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Classes, and award the following relief:

A.  An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Class and Florida Sub-Class, and Plaintiffs' counsel as counsel for the Classes;

B.  An order awarding declaratory relief enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged above;

C.  An order awarding costs, restitution, disgorgement, punitive damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket expenses in an amount to be determined at trial;

D.  An order awarding any applicable statutory and civil penalties;

E.  A declaration that Defendants are required to engage in corrective advertising;

F.  An order requiring Defendants to pay both pre- and post- judgment interest on any amounts awarded;

G.  An award of costs, expenses, and attorneys' fees as permitted by law; and

H.  Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury as to all claims in this action.

Respectfully submitted,

Date:   December 23, 2019

**PODHURST ORSECK, P.A.**

/s/ _Ricardo M. Martinez- Cid_
Ricardo M. Martinez-Cid (FBN 383988)
RMCTeam@podhurst.com
Lea P. Bucciero (FBN 84763)
RMCTeam@podhurst.com
Alissa Del Riego (FBN 99742)
adelriego@podhurst.com
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile: (305) 358-2382
_**Attorneys for Plaintiffs and the Proposed Classes**_